DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE VIRGIN ISLANDS,<br><br>v.<br><br>PHILMORE TREVOR ARCHIBALD and SIXTUS EMMANUEL,<br><br>Defendants. | )<br>)<br>)   Criminal Action No. 2015-0041<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Philmore Archibald*

**Kye Walker, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Sixtus Emmanuel*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on Defendant Sixtus Emmanuel's "Motion to Sever," wherein Defendant seeks to sever his trial from that of his co-defendant, Philmore Archibald. (Dkt. No. 112). The Government filed an Opposition to Defendant's Motion. (Dkt. No. 123). For the reasons discussed below, the Court will deny Defendant Emmanuel's Motion to Sever.

## I.  BACKGROUND

On December 15, 2015, Defendant Sixtus Emmanuel ("Emmanuel") and Defendant Philmore Trevor Archibald ("Archibald") were charged in a four-count Indictment with Carjacking, in violation of 18 U.S.C. § 2119(1); Aggravated Rape First Degree, in violation of 14 V.I.C. §§ 1700(c), 1701(a)(2), and 1701(a)(3); Kidnapping for Rape, in violation of 14 V.I.C. § 1052(b); and Kidnapping for Robbery, in violation of 14 V.I.C. § 1052(a). (*See* Dkt. No. 1). These allegations arose from a September 18, 2015 incident at the Mutual Homes housing community. (Dkt. No. 52 at 6-7). Emmanuel and Archibald allegedly forced a heterosexual couple, S.S. and T.P., into their vehicle at knife point, drove them away from Mutual Homes, and then sexually assaulted S.S. (Dkt. No. 1 at 2-3).

Archibald was arrested in connection with this incident, and a cell phone was recovered from him. (Dkt. No. 52 at 49). Detective Naomi Joseph testified at the suppression hearing held on February 26, 2016, in response to Archibald's Motion to Suppress, that she obtained a warrant to search the cell phone for any photographs or communication between Archibald and the other suspect in this case—Emmanuel. (*Id.*). Archibald's text message records revealed at least two text messages relevant to Emmanuel: a September 18, 2015 message to a third party stating that Archibald was "on the hill" with "Acnel and Sixtus," and another text message three days later, informing a third party that "Sixtus lookin fo u." (Dkt. No. 112 at 2).

Emmanuel asserts that the admission of Archibald's text message from the date of the alleged incident stating that Archibald was "on the hill" with "Acnel and Sixtus" violates the *Bruton* rule and requires that he be tried separately from Archibald. (Dkt. No. 112 at 2). Counsel represents that neither Defendant intends to testify. (*Id.* at 3). While conceding that the statement "does not directly implicate Mr. Emmanuel in the charged crimes like the statement at issue in

2

*Bruton*," Emmanuel argues that because the text message puts him with Archibald on the day of the charged crimes it adds substantial weight to the case against him and prejudice cannot be avoided through redaction, as Emmanuel is the only other defendant in the case. (*Id.* at 3-4). Emmanuel concludes that these circumstances require that the trials be severed. (*Id.* at 3-4).[1]

The Government responds that the September 18, 2015 text message does not give rise to a *Bruton* violation. (Dkt. No. 123). The Government argues that the text is neither facially incriminatory nor does it create "severe prejudice" to Emmanuel, and therefore does not require severance. (*Id.* at 3-4). In the alternative, the Government argues that the message is admissible against Emmanuel as a present sense impression, and the Motion should therefore be denied. (*Id.* at 5).

## II.   DISCUSSION

Federal Rule of Criminal Procedure 14 addresses relief from prejudicial joinder. It provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Under Rule 14, a defendant bears a "heavy burden in gaining severance." *United States v. Quintero,* 38 F.3d 1317, 1343 (3d Cir. 1994). The defendant must "'pinpoint clear and substantial prejudice resulting in an unfair trial.'" *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (quoting *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)). A motion to sever under Rule 14 should be granted "only if there is a serious risk that a joint trial would

---

[1] Emmanuel asserts that he is "primarily concerned" with the "on the hill" text message. (Dkt. No. 112 at 2). While he references the other text message ("Sixtus lookin fo u"), he presents no argument in support of severance based on that message. Accordingly, Emmanuel has failed to meet his burden of establishing prejudice as to that message. In any event, severance based on the second message would fail for the same reasons, discussed below, as the first message.

3

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court "held that a defendant's Sixth Amendment confrontation right is violated when a non-testifying co-defendant's extrajudicial statement inculpating the defendant is introduced at a joint trial, even if a jury is instructed that the confession may be considered as evidence only against the declarant." *Eley v. Erickson*, 712 F.3d 837, 856 (3d Cir. 2013). The Court's holding was grounded in the belief that "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial," limiting jury instructions would ignore "the practical and human limitations of the jury system." *Bruton*, 391 U.S. at 135-36. This right is based in the Confrontation Clause, and thus, a statement must be testimonial in order for the *Bruton* rule to apply. *United States v. Figueroa*, 729 F.3d 267, 276 n. 14 (3d Cir. 2013) ("The protections of the Confrontation Clause and *Bruton* apply only to testimonial statements."); *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) ("To the extent that we have held [that *Bruton* applies to nontestimonial statements], we no longer follow those holdings."); *Waller v. Varano*, 562 F. App'x 91, 94 (3d Cir. 2014). The admissibility of a nontestimonial statement is governed solely by the rules of evidence. *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 823-24 (2006).

In *Crawford v. Washington*, 541 U.S. 36 (2004) the Court endeavored to provide a functional definition of testimonial evidence. The Court identified the core class of testimonial statements as "ex-parte in-court statements," "extrajudicial statements," and "statements . . . made under circumstances, which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" *Id.* at 51-52. "An accuser who makes a formal

statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id*. at 51.

The statement at issue here—that Archibald was "on the hill" with "Acnel and Sixtus"—was made to a third party, ostensibly a civilian, via text message. (Dkt. No. 123 at 2). As evidenced by the parties' filings, the context indicates that there was a casualness, or lack of formality, surrounding the exchange that renders it unlike the core class of testimonial statements identified in *Crawford*. 541 U.S. at 51-52. Nothing on the record indicates that Archibald or the third party "held the objective of incriminating any of the defendants at trial" when they exchanged the message; there is no indication that they were aware of the possibility that the message would be viewed by law enforcement; "and there is no indication that their conversation consisted of anything but [a] 'casual remark to an acquaintance.'" *Berrios*, 676 F.3d at 128 (quoting *Crawford*, 541 U.S. at 51). An exchange of the nature seen here, would not be likely to lead an objective witness to believe that the statement would be available for use at a later trial. *Crawford*, 541 U.S. at 51. For these reasons, the statement made by Archibald via text message is nontestimonial, and *Bruton* is inapplicable to the challenged message. *Id.* at 128.

Moreover, in addition to being nontestimonial, the text message statement is not of an incriminating nature so as to warrant severance. The message places Archibald and two other individuals, including his co-defendant Emmanuel, at the same location at some point during the day of the charged crimes. As Emmanuel acknowledges the statement "does not directly implicate Mr. Emmanuel in the charged crimes like the statement at issue in *Bruton* . . ." (Dkt. No. 112 at 3). In other words, the text message is not facially incriminating. Even assuming that it is appropriate in this context to consider the possibility that a statement may "incriminate

inferentially" (*id.*),[2] the statement at issue here is not the kind of "powerfully incriminating extrajudicial statement" that would defy any attempts at appropriate redactions and a limiting instruction, or challenge "the practical and human limitations of the jury system." *Bruton*, 391 U.S. at 135. As such, Defendant Emmanuel has not met his burden of demonstrating the kind of prejudice with regard to the incriminating character of the evidence that warrants a severance.

In the absence of a *Bruton* issue, Emmanuel has failed to "pinpoint clear and substantial prejudice resulting in an unfair trial." *Riley*, 621 F.3d at 335. In view of the foregoing, Emmanuel has not borne the "heavy burden" necessary for a severance, and the Motion must be denied. *Quintero,* 38 F.3d at 1343.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Emmanuel's "Motion to Sever." (Dkt. No. 112). An appropriate Order accompanies this Memorandum Opinion.

Date: December 28, 2016     _____/s/_____
                           WILMA A. LEWIS
                           Chief Judge

---

[2] In *Vasquez v. Wilson*, 550 F.3d 270, 278 (3d Cir. 2008), the Third Circuit noted: "In *Belle* we approved the approach of the Court of Appeals for the Second Circuit that 'evidentiary linkage or contextual implication may not be utilized to convert a non-*Bruton* admissible statement into a *Bruton* inadmissible statement.'" After considering intervening Supreme Court cases, the Third Circuit concluded that "*Belle* remains good law." *Id.* Nonetheless, the Court recognized that the linkage approach may be viable and determined in *Vasquez* that it "need not decide which approach is correct." *Id.* at 279.